IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

EASTERN DIVISION

NO. 4:18-CV-106

| | | |
|---|---|---|
| DEVONWOOD-LOCH LOMOND LAKE ASSOCIATION, INC., a North Carolina non-profit corporation, ARRAN LAKE HOMEOWNERS ASS'N. INC., a North Carolina non-profit corporation, RAYCONDA HOMEOWNERS ASS'N, INC., a North Carolina non-profit corporation, STRICKLAND BRIDGE ROAD HOMEOWNERS ASS'N, INC., a North Carolina non-profit corporation, JOHN C. LEE and wife CATHERINE A. LEE, individuals, MARTIN YOUNG and wife ANN YOUNG, individuals, GERALD L. ELLISON and wife J.F. DUNN ELLISON, and DANA E. PIKE, and wife, DIANNA M. PIKE, individuals, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| vs. | ) ) | |
| CITY OF FAYETTEVILLE, a municipality formed and maintained under the laws of the State of North Carolina, and CITY OF FAYETTEVILLE PUBLIC WORKS COMMISSION, a North Carolina Public Authority, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

The Plaintiffs, through undersigned counsel, complaining of the Defendants, state and

allege as follows:

**INTRODUCTION**

In 1995, The City of Fayetteville and unincorporated areas of Cumberland County

established and implemented a stormwater utility to provide a mechanism to access funds

required to meet the federal National Pollutant Discharge and Elimination System (NPDES)

mandate arising out of the 1987 Clear Water Act.  In 2001, the City of Fayetteville recognized

the City's growing stormwater infrastructure needs typically inherent to an urbanized area and made an ostensible commitment for future funding. In 2007, the City of Fayetteville imposed an additional stormwater "drainage" fee, assessing all developed properties (residential/non-residential) located within the City limits of Fayetteville. The City of Fayetteville also established by enactment of the General Assembly of North Carolina a Public Works Commission to manage operate, inspect, supervise and upgrade the electric, water and waste water utilities of the City of Fayetteville.

Prior to 2007, in fact as early as 1988, at the request of the Defendants, the Plaintiffs commenced granting to the City of Fayetteville utility easements and rights of way. The easements were for, among other items, water, sewer and stormwater systems as more fully described *infra*.

However, upon information and belief, since at least 2007, the City of Fayetteville and its Public Works Commission have failed to properly manage, implement or allocate the funds collected from the stormwater "drainage" fee to properly or reasonably manage, operate, inspect, supervise and upgrade the stormwater resources including, but not limited to, The City of Fayetteville's easements and installations thereon which unfairly encumber the Plaintiffs' property as more fully described *infra*.

All of the Plaintiffs' property are located within the Cape Fear River Basin, and are a part of the Little Rockfish Watershed. The Defendants possessed knowledge that at all relevant times that the Plaintiffs' property, comprised of lots, lakes and dams, were located within the Little Rockfish Watershed and within the City of Fayetteville.

The Defendants further possessed direct knowledge that virtually all stormwater in the Little Rockfish Watershed was not travelling solely into public use property. In fact, the

2

Defendants possessed direct knowledge that virtually all stormwater within the Little Rockfish Watershed was being directed onto and stored on the Plaintiffs' property, causing the Plaintiffs' property to be damaged and causing private lakes to be filled to unsafe levels with water, debris and sediment. Moreover, the Defendants possessed direct knowledge but ignored the cumulative effect of the increasing amount of stormwater runoff that the Defendants were directing over and into the Plaintiffs' property as a direct consequence of the Defendants' sanctioning and permitting continued growth.

The Defendants had and continue to have a duty to the Plaintiffs by virtue of the applicable governing City of Fayetteville ordinances, the easements granted to the Defendants providing the Defendants access to the Plaintiffs' property, and the use of the Plaintiffs' private property for a public purpose. The Defendants have and had a duty to otherwise protect, maintain and inspect the Plaintiffs' property to determine and take appropriate measures to ensure that the Plaintiffs' property could adequately capture and safely sustain the stormwater runoff cumulatively created within the Little Rockfish Watershed. The Defendants have breached their duty to the Plaintiffs, causing the Plaintiffs to suffer damage to (i) their land, dams, and homes as well as (ii) present and future diminution of value to their property.

The City of Fayetteville and PWC have maintained control over the Plaintiffs' property through the extensive number of easements issued to the City and other elements of control described herein. The City of Fayetteville possesses what amounts to de facto absolute control over the Plaintiffs' property regarding the stormwater runoff which flows into and out of the Plaintiffs' property, some of which is stored on the Plaintiffs' property. The City of Fayetteville and its Public Works Commission has usurped control and ownership over the Plaintiffs' private

property while failing to compensate the Plaintiffs for the use and benefit of the Plaintiffs' property as constitutionally required.

The City of Fayetteville's rights provided by the easements and rights of ways described herein has caused the City directly and indirectly to become a beneficiary of all of the value associated with the Plaintiffs' property. The City of Fayetteville and its Public Works Commission has willfully and intentionally ignored the cumulative impact on the Plaintiffs' property as a result of the City's failure to comply with its own stormwater policies and manual setting forth the City's procedure for managing stormwater. The City of Fayetteville and its Public Works Commission has exercised a total lack of oversight pertaining generally to the cumulative effect of stormwater runoff in the City and specifically with respect to the treatment of the Plaintiffs' property, thereby causing the damages to the Plaintiffs property as further described herein.

## The Homeowner Association Plaintiffs

1.      Plaintiff Devonwood-Loch Lomond Lake Association, Inc. (also referred to herein as "Devonwood") is a non-profit corporation formed and maintained under the laws of the State of North Carolina. Devonwood is a Homeowners Association that was formed under North Carolina law on October 16, 1979.

2.      Plaintiff Arran Lake Homeowners Association, Inc. (also referred to herein as "Arran Lake") is a non-profit corporation formed and maintained under the laws of the State of North Carolina. Arran Lake is a Homeowners Association that was formed under North Carolina law on March 3, 1975.

3.      Plaintiff Rayconda Homeowners Association, Inc. (also referred to herein as "Rayconda") is a non-profit corporation formed and maintained under the laws of the State of

North Carolina. Rayconda is a Homeowners Association that was formed under North Carolina law on April 21, 1995.

4.      Plaintiff Strickland Bridge Road Homeowners Association, Inc. (also referred to herein as "Strickland Bridge") is a non-profit corporation formed and maintained under the laws of the State of North Carolina. Strickland Bridge is a Homeowners Association that was formed under North Carolina law on February 9, 1989.

5.      The Homeowner Association Plaintiffs are collectively referred to herein as the "Homeowner's Associations Plaintiffs".

**The Individual Plaintiffs who are Members of the Homeowner Association Plaintiffs**

6.      Plaintiff John C. Lee and wife Catherine A. Lee ("Plaintiff Lee") is a citizen and resident of Cumberland County, North Carolina. Plaintiff Lee is the legal owner of a single family residence described as 313 Reid Court, Fayetteville, North Carolina, 28314, PIN# 9498-81-5622. Plaintiff Lee is a member of the Plaintiff Devonwood.

7.      Plaintiff Martin J. Young and wife Ann Young ("Plaintiff Young") is a citizen and resident of Cumberland County, North Carolina. Plaintiff Young is the legal owner of three single family residences described as 1448 Paisley Avenue, Fayetteville, North Carolina, 28304, PIN# 0406-57-2061, 1452 Paisley Avenue, Fayetteville, North Carolina, 28304, PIN# 0406-56-3942 and 6209 Gambrills Court, Fayetteville, North Carolina, 28304, PIN#0406-56-1557. Plaintiff Young is a member of the Plaintiff Arran Lake.

8.      Plaintiff Gerald L. Ellison and wife Naomoa Ellison ("Plaintiff Ellison") is a citizen and resident of Cumberland County, North Carolina. Plaintiff Ellison is the legal owner of a single family residence described as 2000 Galax Drive, Fayetteville, North Carolina, 28304, PIN #9496-35-1325. Plaintiff Ellison is a member of the Plaintiff Rayconda.

9.  Plaintiff Dana E. Pike and wife Nancy P. Pike ("Plaintiff Pike") is a resident of Cumberland County, North Carolina.  Plaintiff Pike is the legal owner of a single family residence described as 2664 Strickland Bridge Dundle Road, Fayetteville, North Carolina, 28306, PIN #9495-28-4513.  Plaintiff Belcher is a member of the Plaintiff Strickland Bridge.

10.  The Individual Plaintiffs are collectively referred to herein as the "Individual Plaintiffs".

11.  The Homeowner Association Plaintiffs and the Individual Plaintiffs are collectively referred to herein as "the Plaintiffs".

### The Defendants

12.  The Defendant City of Fayetteville (also referred to herein as the "City" and "Defendant") is a municipality formed and maintained under the laws of the State of North Carolina.

13.  The Defendant City of Fayetteville Public Works Commission (also referred to herein as the "City of Fayetteville PWC" or "PWC") was created in 1905 through an act of North Carolina General Assembly to manage, operate and supervise the electric, water, and wastewater utilities of the City of Fayetteville.  The City of Fayetteville PWC is defined by the North Carolina legislature as a Public Authority in its operation, control, and management of its systems and is subject to the Local Government Budget and Fiscal Control Act as a Public Authority.

14.  The City and PWC are also collectively referred to herein as the Defendants.

15.  The City of Fayetteville has assigned its all of its rights and obligations regarding the management of infrastructure with respect to power and water within the city limits of the City of Fayetteville to the PWC.

## Jurisdiction and Venue

16.     Subject matter jurisdiction over this cause is conferred upon and vested in this Court under and by virtue of 28 U.S.C. § 1331 insomuch that this action involves a federal question under 42 U.S.C. § 1983 as more fully set out herein.

## History, Facts and Events

17.     The City has used the Plaintiffs' property as drainage fields and drainage conveyances for the City's roads and highways to excessively move and store stormwater without the Plaintiffs' permission or consent and without any or adequate compensation.

18.     The stormwater runoff which accumulates in the City of Fayetteville has been artificially channeled by the Defendants through acts and omissions by the Defendants over and onto the Plaintiffs' property throughout the course of at least thirty (30) years.  Throughout this period of continued growth the City of Fayetteville has disregarded the cumulative impact of this growth while the Plaintiffs have suffered the consequences of this action.

19.     The Defendants have failed to provide the Plaintiffs with any or adequate consideration for the continued use of the Plaintiffs' property and the subject easements.

20.     The existing City of Fayetteville stormwater drainage system is undersized, antiquated and, in fact, decrepit.  The Defendants have used the Plaintiffs' property in a manner that is not a natural water course designed to accommodate the cumulative impact of the population growth within the City of Fayetteville and the resulting increased amount of stormwater runoff which has accumulated and continues to accumulate within the City of Fayetteville.

21.     At present, stormwater drainage in the City of Fayetteville flows over and is stored on the Plaintiffs' private property.  Additionally, the stormwater drainage has and

continues to damage the Plaintiffs' private property.  It is incumbent for the City to properly manage the stormwater causing continuous damage to the Plaintiffs' property and to compensate the Plaintiffs for damages caused to the Plaintiffs' property.   Nowhere in any of the easements granted to Defendants by Plaintiffs are they allowed to misuse or cause damages to Plaintiffs property, which has and is occurring on a regular and cumulative basis.

22.     The Plaintiffs are entitled to the recovery of the cost of the repair of the damages to the dams and the resulting lakes that were destroyed.

23.     The Plaintiffs are further entitled to a judgment in the amount of financial damages incurred as a result of the diminution of value of the Plaintiffs' property.

24.     The Defendants, as a consequence of their superior bargaining position over the Plaintiffs, were able to obtain the easements and other rights of way to the Plaintiffs' property for virtually no consideration.  If the Defendants had not utilized their superior bargaining position to obtain the subject record easements and rights of ways, the Defendants would have been forced to engage the legislative process promulgated for condemnation actions to effect a lawful taking of the Plaintiff's property. Regardless of the imbalance in bargaining power used by the city, at no time have Plaintiffs granted Defendants the right to misuse, degrade, and destroy Plaintiffs' property and the easements do not allow such misuse and consequential damages that have occurred and continue to this day.

The History and Circumstances of Devonwood

25.     On October 16, 1979, Plaintiff Devonwood was formed under the laws of the State of North Carolina by the filing of Articles of Incorporation with the office of the North Carolina Secretary of State.

8

26.     On December 26, 1979, a property developer, Barrett and Chadwick Developers, Inc. granted Plaintiff Devonwood the property which comprises the Devonwood-Loch Lomond Lake that is the subject of Plaintiff Devonwood's claims asserted herein.  The subject deed is recorded in Book 2768, Page 765, Cumberland County Registry, and is incorporated herein by reference.

27.     On December 5, 1988, Plaintiff Devonwood granted to Defendant City of Fayetteville a Utility Easement (Water & Sanitary Sewer) over and through Devonwood property including the Deveonwood dam which is the subject of this case and the same dam which was breached.  The Utility Easement is recorded in Book 3440, Page 596, Cumberland County Registry, and is incorporated herein by reference.

28.     On November 7, 1988, a member of the Plaintiff Devonwood who owns property adjacent to the Devonwood Lake granted to the Defendant City of Fayetteville a Utility Easement (PWC Easement No. 10342) over and through the individual's property, permitting the City to drain stormwater into the Devonwood Lake.  The Utility Easement is recorded in Book 3433, Page 745, Cumberland County Registry.

29.     On April 11, 1991, Montclair Water Company granted to Defendant City of Fayetteville a number of easements over and through the Devonwood property, including the Devonwood lake and dam.  The Deed of Easements is recorded in Book 3695, Page 409, Cumberland County Registry, and is incorporated herein by reference.  Defendant PWC acquired these easements from Montclair Water Company including the utility pipes and lines that run through the Devonwood dam.  At the time the utility pipes and lines were installed in the Devonwood dam, they were installed with inadequate soil and through a method that does not

9

meet industry standards. Since the Devonwood dam was breached, PWC's pipes and lines have been broken and remain exposed on Plaintiff Devonwood's property.

30.    On January 20, 1995, Plaintiff Devonwood granted a Utility Easement to Defendant City of Fayetteville which is recorded in Book 4267, Page 0215, Cumberland County Registry, and is incorporated herein by reference.

31.    On February 23, 2007, Plaintiff Devonwood granted to Defendant City of Fayetteville a Surface Water Drainage Easement Agreement which is recorded in Book 7522, Page 01, Cumberland County Registry, and is incorporated herein by reference.

32.    On March 30, 2007, a member of the Plaintiff Devonwood who owns property adjacent to the Devonwood Lake granted to the Defendant City of Fayetteville a Utility Easement (PWC Easement No. 16503) over and through the individual's property, permitting the City and PWC to install a sanitary sewer line and pipe through the individual's property and into the Devonwood Lake. The Utility Easement is recorded in Book 7544, Page 751, Cumberland County Registry.

<u>The History and Circumstances of Arran Lake</u>

33.    On March 3, 1975, Plaintiff Arran Lake was formed under the laws of the State of North Carolina by the filing of Articles of Incorporation with the office of the North Carolina Secretary of State.

34.    On December 18, 1975, a property developer Arran Development, Inc. granted Plaintiff Arran Lake the property which comprises the Arran Lake that is the subject of Plaintiff Arran Lake's claims asserted herein. The subject quit claim deed is recorded in Book 2526, Page 256, Cumberland County Registry.

35.     On March 3, 1997, a member of the Plaintiff Arran Lake who owns property adjacent to the Arran Lake granted to the City of Fayetteville a Utility Easement (PWC Easement No. 12847) over and through the individual's property and adjacent to the Arran Lake. The Utility Easement is recorded in Book 4622, Page 379, Cumberland County Registry.

36.     On March 14, 1997, Plaintiff Arran Lake granted to Defendant City of Fayetteville a Utility Easement (Water & Sanitary Sewer) which is recorded in Book 4628, Page 676, Cumberland County Registry.

37.     On December 23, 1997, Plaintiff Arran Lake granted to City of Fayetteville a Utility Easement (Water and Sanitary Sewer) (PWC Easement No. 13321) which is recorded in Book 4782, Page 186, Cumberland County Registry.

38.     On January 24, 1997, a member of the Plaintiff Arran Lake who owns property adjacent to the Arran Lake granted to the City of Fayetteville a Utility Easement (PWC Easement No. 12783) over and through the individual's property and adjacent to the Arran Lake. The Utility Easement is recorded in Book 4605, Page 288, Cumberland County Registry.

39.     On June 3, 1997, Plaintiff Arran Lake granted to Defendant City of Fayetteville a Utility Easement (Water & Sanitary Sewer) (PWC Easement 12876) which is recorded in Book 4672, Page 410, Cumberland County Registry.

40.     On December 23, 1997, Plaintiff Arran Lake granted to Defendant City of Fayetteville a Utility Easement (Water & Sanitary Sewer) (PWC Easement No. 12876) which is recorded in Book 4682, Page 186, Cumberland County Registry.

41.     On February 23, 1998, Plaintiff Arran Lake granted to Defendant City of Fayetteville a Utility Easement (Water & Sanitary Sewer) (PWC Easement No. 13372) which is recorded in Book 4812, Page 810, Cumberland County Registry.

42.     Historically, the City of Fayetteville's fire department has utilized the water from the lake owned by Plaintiff Arran Lake, prior to the date the lake was destroyed.

<u>The History and Circumstances of Rayconda</u>

43.     On April 21, 1995, Plaintiff Rayconda was formed under the laws of the State of North Carolina by the filing of Articles of Incorporation with the office of the North Carolina Secretary of State.

44.     On October 30, 1969, Astor A. Keith granted Rayconda Lakes, Inc. the property which comprises the upper Rayconda Lake that is the subject of Plaintiff Rayconda's claims asserted herein.  The subject deed is recorded in Book 2187, Page 513, Cumberland County Registry.

<u>The History and Circumstance of Strickland Bridge</u>

45.     On February 9, 1989, Plaintiff Strickland Bridge was formed under the laws of the State of North Carolina by the filing of Articles of Incorporation with the office of the North Carolina Secretary of State.

46.     On November 16, 1988, a property developer Core Construction Company granted Plaintiff Strickland Bridge the lake which comprises the Strickland Bridge Lake that is the subject of Plaintiff Strickland Bridge's claims asserted herein.  The subject deed is recorded in Book 3485, Page 715, Cumberland County Registry.

47.     The City approved the development of the Tarleton Plantation subdivision in Fayetteville, North Carolina.  The development includes a system of streets, gutters and drains to ostensibly manage the stormwater produced in the Tarleton Plantation.  However, the City is knowingly causing a large portion of the stormwater to from the Tarleton Plantation to dump via Sumerlin Drive directly into the Strickland Bridge lake with associated silt and debris.  The

excessive amount of stormwater that the City is dumping into the Strickland Bridge Lake caused the water level to rise significantly over the years leading up to Hurricane Matthew. Moreover, the silt and debris being dumped from the Tarleton Plantation into the Strickland Bridge lake has caused the base of the lake to rise significantly over the years leading up to Hurricane Matthew.

48.     Historically, the City of Fayetteville's fire department has maintained an access point on the Strickland Bridge lake whereby the City of Fayetteville's fire department obtains water from the lake to supply the fire department and its trucks with water.

## CLAIMS FOR RELIEF

49.     The Defendants incorporated and usurped the Plaintiff's property, converting it to be a critical part of the City's stormwater management system. Additionally, the Defendants have used the Plaintiffs' property, lakes, and dams to operate and manage the Defendants' electric, water, and sanitary sewer utility services.

50.     The Defendants utilized the land and lakes of the Plaintiffs for public use because such action was advantageous and beneficial to the public. The Defendants usurped the Plaintiffs' property through a series of easements provided to the Defendants over the course of several years for little or no consideration. The easements, when viewed collectively, provided to the Defendants virtually unfettered use of the Plaintiffs' property for a public use while also requiring the Defendants to maintain and manage the easements.

51.     Over the course of 30 years, the Defendants neglected, ignored, and disregarded the condition of the easements, failing to maintain, manage, oversee, or upgrade the easements while the City dumped and stored the City's stormwater in public use properties. Instead, the City utilized the Plaintiffs' private property along with the City's easements to take the Plaintiffs' property for a public use.

## FIRST CLAIM FOR RELIEF
### Violation of 42 U.S.C. § 1983

52.     The allegations contained in Paragraphs 1 - 51 of the Complaint are re-alleged and incorporated herein by reference as if fully set forth herein.

53.     The Defendants acting under the color of state law deprived Plaintiffs of their rights secured to them under Article V of the United States Constitution: deprivation of property without due process of law and taking of private property for public use without just compensation in violation of 42 U.S.C. § 1983.

54.     The acts and omissions by the Defendants have been committed under color of North Carolina law, the local government ordinances, and the government practice of the City of Fayetteville.

55.     The acts and omissions by the Defendants have been committed with deliberate indifference to the Plaintiffs and have caused the Plaintiffs to be deprived of their property rights in a manner that was foreseeable by the Defendants.

56.     The Plaintiffs are entitled to a monetary judgment against the Defendants, jointly and severally, as a result of the acts and omissions by the Defendants.

57.     The Plaintiffs are further entitled to a judgment against the Defendants, jointly and severally, for reasonable attorney's fees under 42 U.S.C. § 1988 as part of the costs incurred by the Plaintiffs through the prosecution of this action.

## SECOND CLAIM FOR RELIEF
### Breach of Easements

58.     The allegations contained in Paragraphs 1 – 57 of the Complaint are re-alleged and incorporated herein by reference as if fully set forth herein.

14

59.     The Defendants are grantors and the Plaintiffs are grantees of the easements identified above and incorporated herein by reference.  When the easements were granted to the Defendants by the Plaintiffs, the Defendants provided the Plaintiffs with only nominal consideration in exchange for the easements.

60.     The Defendants have materially and continually breached the terms and spirit of the easements by acts and omissions resulting in the Defendants' failure to maintain, improve, inspect, repair, or replace when necessary the equipment and other improvements installed in and on the lands encumbered by the easements.

61.     The Defendants have utilized the easements excessively and with a lack of regard for the cumulative impact on stormwater retention across and within the Plaintiffs' property.

62.     The Defendants' material breach of the terms and spirit of the easements entitles the Plaintiffs to compensatory damages for the damages caused by Defendants' acts and omissions.

63.     Plaintiffs are entitled to and hereby demand compensatory damages in an amount exceeding $75,000, the exact amount to be determined at trial.

64.     Alternatively or in conjunction with an award for compensatory damages, the Plaintiffs are entitled to and hereby request a judgment by the Court ordering that the easements be terminated or modified to reflect the parties intentions and the scope of the Defendants' use. This conduct has rendered the easements and installations thereon to be in decrepit condition and through their excessive use has caused the failure and destruction of the Plaintiffs' property, homes, dams and lakes.

## THIRD CLAIM FOR RELIEF
### Inverse Condemnation // North Carolina General Statute §§ 40A – 51 and 40A – 3(b)(4)

65.    The allegations contained in Paragraphs 1- 64 of the Complaint are re-alleged and incorporated herein by reference as if fully set forth herein.

66.    The Defendants have unlawfully appropriated the property of the Plaintiffs for stormwater drainage.  This action has been initiated within twenty four (24) months of the date of the taking of the affected property.  A memorandum of this action is being filed with the Cumberland County, North Carolina register of deeds in accordance with N.C.G.S. § 40A-51(b).

67.    The acts and omissions by the Defendants have resulted in a taking and/or damage of Plaintiffs' property.  This unlawful taking by the Defendants of the Plaintiffs' property has and continues to negatively impact the Plaintiffs' property and will continue to negatively impact the Plaintiffs' property into the future.

68.    The Defendants are not permitted to take the Plaintiffs' property without just compensation to the Plaintiffs.   The Defendants' acts and omissions resulting in an unlawful taking has caused damage to the Plaintiffs' property and has caused the Plaintiffs' property to decrease in value.

69.    The Defendants, through their acts and omissions, failed to prevent foreseeable damage to the Plaintiffs' property.

70.    The Defendants' failure to compensate the Plaintiffs' for the damages to their property or to remedy the unlawful and decrepit stormwater management system has caused the Plaintiffs, composed of a relatively small percentage of City of Fayetteville residents, to bear the burden of costs and repairs which is a burden that should fall on the public and funds for public use as a whole.

16

71. The acts and omissions by the Defendants have caused the Plaintiffs to suffer damages to their property and homes.

72. Plaintiffs are entitled to compensatory damages for inverse condemnation against the Defendants in an amount in exceeding $75,000, the exact amount to be determined at trial. In addition, the Plaintiffs are entitled to a recovery of all reasonable attorney's fees they have incurred as a result of this action.

## FOURTH CLAIM FOR RELIEF
### Negligence

73. The allegations contained in Paragraphs 1- 72 of the Complaint are realleged and incorporated herein by reference as if fully set forth herein.

74. The Defendants were negligent, reckless, willful, and wanton in one or more of the following ways:

a. In failing to maintain a drainage system and stormwater collection system which the Defendants installed on the Plaintiffs' property.

b. In failing to upgrade the drainage system and stormwater collection system which the Defendants installed on the Plaintiffs' property.

c. In failing to inspect the drainage system and stormwater collection system which the Defendants installed on the Plaintiffs' property.

d. In failing to upgrade the drainage system and stormwater collection system to accommodate the cumulative impact of increased and inadequately supervised development of residential and commercial property upstream from the Plaintiffs' property, channeling water upstream and into the Plaintiffs' property.

e. In collecting stormwater in various drainage bases onto areas not owned by the Defendants or on public land and draining the stormwater onto the Plaintiffs' property knowing

17

that the drainage of the stormwater onto the Plaintiffs' property would cause significant damage to the Plaintiffs' property.

   f.  Draining stormwater on the Plaintiffs' property causing flooding and damage to the Plaintiffs' property.

   75.  As a direct and proximate result, the Plaintiffs have suffered damages to their property, their homes and through the diminution of the value of their property.

   76.  Plaintiffs are entitled to compensatory damages in an amount in exceeding $75,000, the exact amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
Negligence Per Se

   77.  The allegations contained in Paragraphs 1- 76 of the Complaint are realleged and incorporated herein by reference as if fully set forth herein.

   78.  The City of Fayetteville's acts and omissions described herein constitute a violation of North Carolina General Statute § 160A-311, *et seq*, Section 1, Chapter 12 of the Cumberland County Code and its own Stormwater Quality Management Program Plan.

   79.  The Defendants' violation of the subject regulations, ordinances, and state and federal law have caused damages to the Plaintiffs' property as described herein.

   80.  Plaintiffs are entitled to compensatory damages in an amount in exceeding $75,000, the exact amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
Nuisance

   81.  The allegations contained in Paragraphs 1-80 of the Complaint are realleged and incorporated herein by reference as if fully set forth herein.

18

82.     The Defendants through their acts and omissions created a nuisance by utilizing the Plaintiffs' property as a public use collection facility for stormwater.  The Defendants failed to consider the cumulative impact of directing excessive stormwater over and into the Plaintiffs' property instead of adequately managing, directing, and collecting stormwater through public use measures management.

83.     The Defendants' acts and omissions have created a nuisance per se which has become dangerous and a threat to the Plaintiffs' life, health, and property.

84.     The Defendants had no right to neglect the inspection, maintenance, repair, and replacement of the easements with respect to the scope of the City's direction and dissemination of stormwater over and into the Plaintiffs' property in lieu of directing and disseminating the stormwater over and into public use facilities and property.

85.      The Defendants had no right to neglect the City of Fayetteville Stormwater Management Ordinance and related City of Fayetteville stormwater management plans to the detriment of the Plaintiffs' life, health, and property, by directing and disseminating an unreasonable amount of stormwater over and into the Plaintiffs' property.

86.     The Plaintiffs have suffered damages including loss of property, damages to their property, damages to the improvements on their property, damages to their health, and a diminution of value to their property.

87.     Plaintiffs are entitled to compensatory damages in an amount in exceeding $75,000, the exact amount to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
<u>Trespass</u>

88.     The allegations contained in Paragraphs 1 – 87 of the Complaint are realleged and incorporated herein by reference as if fully set forth herein.

89.     The Defendants trespassed on the Plaintiffs' property without consent.  The

Defendants have acted recklessly and without consideration of the ostensible rights afforded to

the Defendants under the easements granted to the Defendants to trespass on the Plaintiffs'

property in breach of the easements.

90.     The Plaintiffs have been damaged from the cumulative and excessive amounts of

stormwater the Defendants have directed and disseminated over and through the Plaintiffs'

property in lieu of directing the stormwater through dedicated public use mechanisms and

property.

91.     Plaintiffs are entitled to compensatory damages in an amount in exceeding

$75,000, the exact amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### Quantum Meruit/Unjust Enrichment

92.     The allegations contained in Paragraphs 1 – 91 of the Complaint are realleged and

incorporated herein by reference as if fully set forth herein.

93.     Defendants have for at least thirty years enjoyed the direct and indirect benefits of

the use of the private property identified herein for public use without compensation to the

owners of the subject property. As a result, Defendants have been unjustly enriched.

94.     Defendants have further enjoyed the direct and indirect benefits of the easements

referenced herein for public use without compensation to the owners of the property that the

easements encumber.  Additionally, Defendants have enjoyed the continuous financial benefit

associated with avoiding the payment of the costs associated with the reasonable inspection,

management, and upgrades to the easements and property owned by the Plaintiffs.  As a result,

Defendants have been unjustly enriched.

20

95.     Defendants are thus indebted to Plaintiffs for damages for the amounts necessary to repair or replace the easements and subject installations made by the Defendants within the easements, to repair or replace the subject dams and lakes, and Plaintiffs are entitled to recover those damages from the Defendants.

### NINTH CLAIM FOR RELIEF
Punitive Damages

96.     The allegations contained in Paragraphs 1- 95 of the Complaint are realleged and incorporated herein by reference as if fully set forth herein.

97.     The Defendants' conduct, as described herein, was willful, wanton, and malicious so as to entitle punitive damages against the Defendants, jointly and severally, in favor of Plaintiffs.

98.     Plaintiffs are entitled to punitive damages in an amount exceeding $75,000, the exact amount to be determined at trial.

WHEREFORE, the Plaintiffs respectfully pray to the Court as follows:

1.     An order awarding the Plaintiffs a monetary judgment against the Defendants, jointly and severally, in the amount of damages incurred by Plaintiffs equal to the diminution of the value of their property without due process of law and without just compensation.

2.     An order awarding the Plaintiffs a monetary judgment against the Defendants, jointly and severally, in the amount of damages incurred by the Plaintiff to repair the Plaintiffs' property, dams, lake areas, and other areas of the property breached and/or damaged by the acts and omissions of the Defendants.

3.      An order which renders the easements to be extinguished or modified to reflect the Plaintiffs and Defendants intentions under the terms of the easements and/or to reflect the Defendants duties to under the rights provided to the Defendants under the easements.

4.      An order awarding the Plaintiffs a monetary judgment against the Defendants, jointly and severally, pursuant to 42 USC § 1983, as a result of the acts and omissions by the Defendants

5.       A judgment in favor of the Plaintiff and against the Defendants, jointly and severally, in the amount for all reasonable attorney's fees and costs incurred by the Defendant through their prosecution of this case based on 42 USC § 1988, and under North Carolina law.

6.      A judgment against the Defendants, jointly and severally, in favor of the Plaintiffs under North Carolina General Statute §§ 40A – 51 and 40A – 3(b)(4);

7.      A judgment against the Defendants, jointly and severally, for punitive damages.

8.      An order by the Court enjoining the Defendants to create an oversight plan to manage and maintain the property with respect to the ability to retain stormwater for the Defendants; and

9.      Award such other and further relief as the Court deems just and proper.

Respectfully submitted this the 8th day of June, 2018.

EDMISTEN & WEBB LAW

*/s/  William W. Webb, Jr.*
WILLIAM W. WEBB, Jr.
N. C. Bar No. 26814
118 St. Mary's Street, 2nd Floor
Raleigh, NC  27605
Telephone:  (919) 831-8700
Facsimile:   (919) 831-8749
woodywebb@mindspring.com


LAW OFFICE OF MATTHEW I. VAN HORN, PLLC

*/s/  Matthew I. Van Horn*
MATTHEW I. VAN HORN
N. C. Bar No. 26166
410 North Boylan Avenue
Raleigh, NC  27603
Telephone:  (919) 835-0880
Facsimile:   (919) 835-2121
matthew@vanhornlawfirm.com